# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

DEBORAH DOWD DOLLAR,

    PLAINTIFF,

VS.                                                                  CASE NO.: CV-11-J-1532-S

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    DEFENDANT.

## **MEMORANDUM OPINION**

This matter is before the court on the record and briefs of the parties. The court has jurisdiction pursuant to 42 U.S.C. § 405. The plaintiff is seeking reversal or remand of a final decision of the Commissioner. All administrative remedies have been exhausted.

### **Procedural Background**

The plaintiff applied for Disability Insurance Benefits, alleging an inability to work since October 2, 2006 (R. 65, 112), due to injuries sustained in two motor vehicle accidents (R. 55, 116). She alleges back pain resulting in an inability to lift, sit, stand, remember, concentrate or focus (R. 116). The administrative law judge (ALJ) reached a determination that the plaintiff was not disabled at any time from October 2, 2006, through her date last insured, December 31, 2008 (R. 28). The plaintiff appealed this decision to the Appeals Council which denied her request for

review on March 4, 2011 (R. 1-3). The ALJ's decision thus became the final order of the Commissioner. *See* 42 U.S.C.§ 405(g). This action for judicial review of the agency action followed (doc. 1). The court has considered the entire record and whether the decision of the ALJ is supported by substantial evidence. For the reasons set forth herein, this case is **REVERSED** and **REMANDED.**

## Factual Background

The plaintiff was born on December 17, 1962, and is a high school graduate (R. 51, 112). The plaintiff was fired from the last job she had for missing a day of work (R. 51). She testified that she could not move, bend, twist or turn over due to back pain, and she has not had a pain free day since she applied for benefits (R. 37). She sees a pain management specialist, who prescribes time release morphine (R. 37, 40). She also takes Lyrica for fibromyalgia, and Lortab for pain (R. 40). These medications make her sleepy and dizzy (R. 41). She also has a cane and a back brace (R. 41-42).

In a typical day, her pain ranges from a 6 to a 10 out of 10, but sitting in a recliner and taking her medication both help (R. 38). She estimates that in a typical 8 to 5 workday, she spends six of those hours lying down (R. 39). She also uses a heating pad and Icy Hot (R. 39). The plaintiff testified that the pain interferes with

her ability to concentrate and focus (R. 40). She estimates that she sleeps about four hours a night, because her pain wakes her up when she turns (R. 43).

The plaintiff stated she can lift five pounds with two hands, but if she tries to lift more, it pulls on her back (R. 44). Her husband does all the household chores, all the cooking, helps her get in and out of the bathtub, and helps her dress (R. 45).

The Vocational Expert ("VE") testified that the plaintiff's previous work as a housekeeper and a food service clerk were both light and low semi-skilled (R. 53). Because the ALJ decided to refer the plaintiff to an orthopedic specialist for a further consultative evaluation, no hypothetical questions were asked of the VE[1] (R. 59-63).

The medical evidence in the record at the time of the hearing demonstrates that the plaintiff was in a car wreck in 1997 from which she suffered numerous back bone injuries and rib fractures (R. 154-169). Her spinal injuries were noted as a burst-type fracture of T12, a minimally displaced fracture of T11, and a right superior end-plate fracture of L2 (R. 159, 161, 164). Her right 10th to 12th ribs were also fractured (R. 165).

X-rays in 2003 reflect findings of thoracic scoliosis centered at T9-10; chronic mild compression deformities at T12 and L1, with associated loss of disc space height

---

[1] Plaintiff was referred to Dr. Bruce Romeo for this evaluation, who's specialty is internal medicine, and not orthopedics. *See* R. 345.

at T12-L1 (R. 270). The same study also noted degenerative disc disease and minimal scattered spurs (R. 270).

In July 2006 the plaintiff reported back pain after moving boxes (R. 257). She was sent for MRIs of her back (R. 259-260), and thereafter referred to PainSouth for pain management (R. 177). The plaintiff was noted to suffer from lower thoracic back pain, back pain radiating into her legs, and neck pain radiating into her arms (R. 177). These records reflect that she was taken off work by Dr. Theiss at the Spain Clinic at UAB, and that she continued to be off work because of her medical condition (R. 177). Upon examination, she was noted to be able to walk for five minutes, able to sit for 20 minutes and rarely able to do housework (R. 177). No symptom magnification or excessive pain behavior was seen, rather, Dr. Kendrick found that the plaintiff "appears uncomfortable" (R. 178). She was noted to suffer from scoliosis, tenderness around T12-L1, paraspinal muscle spasms and tenderness in her lumbar spine were observed as well as audible crepitus (R. 178). Further, the plaintiff could bend forward within 15 degrees of normal, but had difficulty straightening up again (R. 178). Her diagnoses include cervical degenerative disc disease and a history of lumbar and thoracic compression fracture (R. 170, 178). Dr. Kendrick recommended epidural injections (R. 179). MRIs conducted at the time found mild degenerative spinal stenosis at L4-5 with small central disc protrusion, a

small disc protrusion at L3-4 with borderline spinal stenosis (R. 180) and changes related to chronic mild T11 and T12 compression fractures with mild focal kyphosis (R. 181).

In December 2006 the plaintiff asserted her pain was an average of 6 or 7 out of 10 for the past month (R. 173-174). She was noted to be crying due to pain, related her neck was cracking, and a prior epidural injection had increased her pain (R. 174). Dr. Kendrick, who also treats the plaintiff at PainSouth, encouraged her to exercise as much as possible (R. 173). On January 12, 2007, the plaintiff related that her medication was helpful in relieving her pain (R. 170). She was prescribed Norco, Avinza and doxepin for pain relief[2] (R. 170). In February 2007 the plaintiff stated her pain was under excellent control, rating it as a 1 out of 10 (R. 171). Her prescription for doxepin was discontinued due to unwanted side-effects, and her diagnoses on that date included cervical herniated nucleus pulposus, C5-6, as well as a thoracic compression fracture and insomnia (R. 171).

In March 2007 her reported pain was a 5 out of 10 (R. 198). At her April 11, 2007, visit, the plaintiff rated her pain as a 6 out of 10 and also mentioned left arm numbness at night (R. 197). The record reflects that the plaintiff claimed benefit from

---

[2]Norco is an opiod analgesic, providing a mixture of hydrocodone and acetaminophen. Avinza is an oral form of morphine used to treat moderate to severe chronic pain. Doxepin is used to treat depression and anxiety. The plaintiff also takes Lyrica (used for neuropathic pain such as from fibromyalgia or diabetic nerve pain), and had been tried on Cymbalta and Lunesta (R. 173-174).

Lyrica and noted it decreased her arm and leg problems (R. 197). She was noted to walk and get in and out of a chair easily (R. 197).

The plaintiff was referred for a consultative evaluation in April 2007 (R.209-211). The examiner recorded plaintiff's cervical range of motion was reduced by 25-50%, and her dorsolumbar range of motion was decreased by 75%, with marked paraspinal tightness throughout her lumbar and thoracic spine (R. 210-211). Straight leg raising caused centralized low back pain and she was noted to have paraspinal tenderness at her thoracic and lumbar spine (R. 211). The examiner concluded that the plaintiff suffered from cervicalgia and nonradicular low back pain (R. 211).

April and May 2007 records include plaintiff's complaints of pain at a level of 6 out of 10, radiating down her arms and into her hands, easy fatigue, and increased pain with activity (R. 236, 242). June 2007 records from PainSouth note that the plaintiff reported good pain control from her current medications of Lyrica, Norco, Lunesta, and Avinza, but she was noted to have limited range of motion in her neck and slight mid-back tenderness and pain and soreness in her mid-back (R. 235).

In July 2007 the plaintiff reported pain at a level of 4 out of 10 (R. 289). She also reported she fell, and that she loses her balance due to a previous head injury, so she uses a cane at home (R. 289). Upon examination, she was noted to have a reduced range of motion in her spine, and was diagnosed with chronic pain syndrome,

cervical degenerative disease, and fracture of her vertebral column (R. 291). Dr. Kendrick recommended that the plaintiff use a cane and caution when walking to avoid falls (R. 291). A further fall was reflected in the August 2007 record, although the plaintiff's pain was a 2 out of 10 at that time (R. 293). However, in September 2007 the plaintiff reported her pain as a 10 out of 10 (R. 296). She was out of her pain medication and experiencing withdrawal symptoms (R. 296). Her spinal range of motion was decreased due to pain (R. 298). October and November 2007 records reflect the plaintiff described her pain as a 5 out of 10 in October and a 3 out of 10 in November, with pain radiating into her right arm and shoulder and into both legs (R. 300, 304). Again, her entire spinal range of motion was decreased due to pain (R. 302), and paraspinal tenderness was present (R. 305).

Dr. Kendrick's April 2008 record reflects similar findings, with the plaintiff reporting increased pain, so her dosage of Avinza was increased (R. 311). Additionally, in January 2008 Dr. Kendrick completed plaintiff's application for disability access parking privileges, noting that the plaintiff could not walk 200 feet without assistance, was severely limited in her ability to walk, and that he believed her disability to be long-term (R. 313). Plaintiffs medical records for 2008 and 2009 remain unchanged, with notations of ongoing pain, muscle spasms, tenderness,

decreased range of cervical motion, and degenerative disc disease (R. 327-330, 333-335). In September 2008 the plaintiff was prescribed a TENS unit (R. 328).

Dr. Kendrick completed a Physical Capacities Evaluation for plaintiff in March 2009 (R. 338). In his opinion the plaintiff could lift 20 pounds occasionally to 10 pounds frequently, could sit two hours in an eight hour day, could stand and walk a combined total of two hours in an eight hour day, and had restrictions on pushing and pulling, climbing, bending, reaching, and working around hazardous machinery (R. 338). He noted the plaintiff had increased functional limitations and her symptoms had increased in severity, resulting in more restrictions on activity (R. 338). Furthermore, Dr. Kendrick stated that plaintiffs pain was present to such an extent as to be distracting to the adequate performance of daily work activities, that physical activity would increase her pain to such a degree as to cause distraction from or total abandonment of a task, and that plaintiff's medications would cause some limitations (R. 339-340). He believed her medical condition could reasonably cause the level of pain she claimed (R. 340).

The plaintiff was referred for a consulative evaluation in May 2009, post-hearing, by the ALJ (R. 345). That examiner noted that the plaintiff was in chronic pain management, but found her to have normal range of motion everywhere tested (R. 348-350). In his opinion, the plaintiff could lift and carry up to 20 pounds

frequently and up to 10 pounds continuously (R. 354); and could sit, walk and stand for eight hours at a time without interruption, as well as eight hours in an eight hour work day (R. 355). He noted the plaintiff did not require the use of a cane, and found no limitations in the plaintiff's use of her hands to perform various tasks, other than limiting her to frequent, as compared to continuous, reaching overhead (R. 356). He further found no limitations on the plaintiff's postural activities, but did mark that she should never operate a motor vehicle (R. 357-358).

## Standard of Review

In a Social Security case, the initial burden of establishing disability is on the claimant, who must prove that due to a mental or physical impairment he is unable to perform his previous work. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir.1987). If the claimant is successful, the burden shifts to the Commissioner to prove that the claimant can perform some other type of work existing in the national economy. *Id.*

This court's review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir.1990). "Substantial evidence" is generally defined as "such relevant evidence as a reasonable mind would accept as adequate to support a

9

conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir.1996); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983). This court also must be satisfied that the decision of the Commissioner is grounded in the proper application of the appropriate legal standards. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir.1988); *Bridges v. Bowen,* 815 F.2d 622, 624 (11th Cir.1987); *Davis v. Shalala*, 985 F.2d 528 (11th Cir.1993). No presumption of correctness applies to the Commissioner's conclusions of law, including the determination of the proper standard to be applied in reviewing claims. *Brown v. Sullivan*, 921 F. 2d 1233, 1235 (11th Cir.1991); *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir.1991). Furthermore, the Commissioner's "failure to ... provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius*, 936 F.2d at 1145-1146.

When making a disability determination, the ALJ must consider the combined effects of all impairments. *Davis v. Shalala*, 985 F.2d at 533; *Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir.1990); *Walker*, 826 F.2d at 1001. When more than one impairment exists, the plaintiff may be found disabled even though none of the impairments considered alone would be disabling. *Id*. The ALJ must evaluate the combination of impairments with respect to the effect they have on the plaintiff's

ability to perform the duties of work for which he or she is otherwise capable. *Lucas v. Sullivan*, 918 F.2d 1567, 1574 (11th Cir.1990). Merely reciting that the plaintiff's impairments in combination are not disabling is not enough. The ALJ is required to make specific and well articulated findings as to the effect of the combination of impairments. *Walker*, 826 F.2d at 1001.

## Legal Analysis

In this case, the ALJ found that the plaintiff suffered from the severe impairments of lumbar spine degenerative disc disease, and cervical spine degenerative disc disease (R. 21). He found no impairment or combinations of impairments which, singly or in combination, met or medically equaled the criteria of any of the listing of Impairments found in 20 CFR 404, Subpart P, Appendix 1 (R. 22). The ALJ mentioned the April 28, 2007, consultative examination, but apparently gave it no weight (R. 26). He considered the Physical Capacities Evaluation completed by Dr. Kendrick, but found it to be credible only to the extent it was consistent with the opinion of Dr. Bruce Romeo, the 2009 consultative examiner (R. 27).

The ALJ considered the plaintiff's subjective complaints, but found them not to be credible to the extent alleged (R. 27). Based upon a selective review of the medical evidence, the ALJ determined the plaintiff retained the residual functional

capacity to perform a full range of light work (R. 27). Despite years of treatment for back pain, the ALJ apparently ignored all of the medical records regarding its severity because Dr. Kendrick had encouraged the plaintiff to be as active as possible, and because the plaintiff has not been to an orthopedic doctor in spite of having medical insurance (R. 27). In fact, the ALJ stated "it is unclear why she never sought medical treatment other than pain management..." (R. 27), although there are no referrals for any other kind of treatment in the record. Additionally, the ALJ found support for his conclusions in plaintiff's report of having hurt herself moving boxes in July 2006 (R. 27), although her medical records concerning her allegations of disabling pain post-date that time, and she claims disability from October 2006 forward.

In her memorandum of law, the plaintiff asserts the ALJ erred in failing to properly apply the Eleventh Circuit's three-part pain standard. Plaintiff's memorandum, at 4. Proper application of the pain standard, used when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms, requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir.1995) (*quoting Holt v. Sullivan*, 921

F.2d 1221, 1223 (11th Cir.1991)). While the standard requires objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, it does not require objective proof of the pain itself.

Thus under both the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the standard a claimant who can show that her condition could reasonably be expected to give rise to the pain she alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. *See* 20 CFR §§ 404.1529 and 416.929. "A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Foote*, 67 F.3d at 1561. Therefore, if a plaintiff testifies she suffers from pain at a level that would prevent work and she satisfies the three part pain standard, she must be found disabled unless that testimony is properly discredited.

In the facts before this court, the plaintiff has alleged disabling pain, and that allegation is supported by diagnoses of chronic pain, cervical degenerative disc disease, thoracic scoliosis, and history of a thoracic fracture. MRIs, which are objective medical evidence, support these conditions. Dr. Kendrick explicitly stated that the plaintiff's condition was such that it could cause the level of pain the plaintiff

alleged. To not even consider whether the plaintiff suffered from disabling pain was error on the part of the ALJ.

The plaintiff further argues that the ALJ failed to give the opinion of the plaintiff's treating physician proper weight. Plaintiff's memorandum, at 8. Clearly, the ALJ failed to set forth any reasons for accepting the opinion of Dr. Romeo from his one time consultative examination of the plaintiff over the opinion of Dr. Kendrick, who has treated the plaintiff for multiple years. The ALJ may reject the opinion of any physician when the evidence supports a contrary conclusion. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir.1983). The ALJ is required, however, to state with particularity the weight he gives to different medical opinions and the reasons why. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).

> Absent "good cause," an ALJ is to give the medical opinions of treating physicians "substantial or considerable weight." *Lewis,* 125 F.3d at 1440; *see also* 20 C.F.R. §§ 404.1527(d)(1)-(2), 416.927(d)(1)-(2). Good cause exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1241. With good cause, an ALJ may disregard a treating physician's opinion, but he "must clearly articulate [the] reasons" for doing so. *Id*. at 1240-41.

*Winschel v. Commissioner of Social Security,* 631 F.3d 1176, 1179 (11th Cir.2011). In the facts before this court, the ALJ chose to ignore the opinion of Dr. Kendrick, a pain specialist, simply because it was inconsistent with that of Dr. Romeo's opinion.

The ALJ does not even consider whether Dr. Kendrick's opinion was consistent with the record as a whole, whether Dr. Romeo's opinion was consistent with the plaintiff's medical records, and fails to give any weight to the opinion of the 2007 consultative examiner, which was more akin to Dr. Kendrick's findings than Dr. Romeo's.

Under the "treating physician rule," an ALJ may not reject a treating physician's opinion without good cause. *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir.1991). Good cause exists if the opinion is wholly conclusory, unsupported by the objective medical evidence in the record, inconsistent within itself, or appears to be based primarily on the patient's subjective complaints. *Id*.; see *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159-60 (11th Cir.2004); *Lewis*, 125 F.3d at 1440. None of these exceptions is relevant here. "[A]s a hearing officer [the ALJ] may not arbitrarily substitute his own hunch or intuition for that of a medical professional." *Marbury v. Sullivan*, 957 F.2d 837, 840-41 (11th Cir.1992). *See also Graham v. Bowen*, 786 F.2d 1113, 1115 (11th Cir.1986). The ALJ cannot arbitrarily reject uncontroverted medical testimony. *Walden v. Schweiker*, 672 F.2d 835, 839 (11th Cir. 1982); *see also Flynn v. Heckler*, 768 F.2d 1273, 1275 (11th Cir. 1985).

The Eleventh Circuit has specifically rejected the ALJ's approach here, that being merely to state that he disagrees with the medical evidence. In reviewing a similar opinion, the Court stated:

> The decision states only that the ALJ "has carefully considered all of the testimony ... and exhibits ... and has given weight to each as he feels should be properly accorded to it." This statement tells us nothing whatsoever it goes without saying that the ALJ gave the testimony the weight he believed should be accorded to it. What is required is that the ALJ state specifically the weight accorded to each item of evidence and why he reached that decision. In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence. "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.' " *Stawls v. Califano*, 596 F.2d 1209, 1213 (4th Cir. 1979) (quoting *Arnold v. Secretary of HEW*, 567 F.2d 258, 259 (4th Cir. 1977)).

*Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir.1981).

The ALJ's disregarding of all evidence that contradicted his very own opinion, and failing to consider the plaintiff's pain as required by the Eleventh Circuit, constituted legal error. Lending credence to the severity of limitations claimed by the plaintiff are multiple years of treatment records for back pain, diagnoses of chronic pain, and doctors' willingness to prescribe narcotic pain medication for plaintiff's back pain.

No medical evidence contradicts the plaintiff's physicians' conclusions, and none of them opined that the plaintiff was malingering. Rather, they demonstrate that each of the plaintiff's treating physicians took her complaints seriously and have resolved to treatment by narcotic pain medication in attempts to give the plaintiff relief from her pain. The record also reflects attempts at other types of treatment have been unsuccessful. The court finds the record devoid of substantial evidence to support the decision of the ALJ.

The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-1146 (11th Cir.1991). Here, multiple medical opinions concerning the plaintiff's pain are before the court. By inferring that the plaintiff was able to work from his selective review of the evidence, the ALJ substituted his opinion for that of all of the medical reports in the file. Because of this error, the court must remand this case to the Commissioner for proper consideration of the medical evidence contained in the record.

## Conclusion

Based on the foregoing, the court is of the opinion that the decision of the ALJ was founded upon errors of law, and therefore the decision of the Commissioner must

be **REVERSED** and this case is **REMANDED** for proper consideration of the evidence and proper application of the law, including the pain standard. Should a new hearing be found necessary, the same shall include testimony from a VE based on hypothetical questions which include the limitations found by plaintiff's treating physicians.

      **DONE** and **ORDERED** the 14th day of November 2011.

                                            INGE PRYTZ JOHNSON
                                            U.S. DISTRICT JUDGE